BLANCHE BALDWIN, ADMINISTRATRIX AD PROSEQUEN-
DUM OF THE ESTATE OF STEWART LESLIE BALDWIN,
DECEASED, PLAINTIFF-APPELLANT, v. LINDE-GRIF-
FITH CONSTRUCTION COMPANY, A DELAWARE COR-
PORATION, AUTHORIZED TO TRANSACT BUSINESS IN
THE STATE OF NEW JERSEY, DEFENDANT-RESPOND-
ENT.

Argued May 21, 1935—Decided October 9, 1935.

For the plaintiff-appellant, *Elias G. Willman* (*Lindabury,
Depue & Faulks, Walter F. Waldau* and *William L. Dill, Jr.,*
of counsel).

For the defendant-respondent, *Kellogg & Chance.*

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. At the close of the trial of this
cause in the Supreme Court Circuit (Essex county) the court
directed the jury to find a verdict of no cause of action and
from the judgment entered thereon the plaintiff, administra-
trix *ad prosequendum* of the estate of her deceased husband,
appeals.

The deceased, Stewart L. Baldwin, at the time of the hap-
pening for which damages are sought, was an employe of the

Federal Shipbuilding and Dry Dock Company, which operated a shipbuilding plant on the Hackensack river in Kearny, New Jersey. He received injuries, from which he died, at the hands of the defendant corporation, Linde-Griffith Construction Company and, it is alleged, through its negligence.

The Federal Shipbuilding and Dry Dock Company had, sometime previously, caused a cofferdam to be built, projecting from the shore into the river, to enable it to better conduct its business of ship construction. This cofferdam was fashioned by enclosing two parallel piers which were permanently lined with interlocking iron sheeting and which, when joined by a connecting row of temporary piling at the off-shore end of the piers, which was likewise rendered water tight by means of iron sheeting, made a U-shaped compartment. The river water when pumped from this cofferdam, left the enclosure dry for the work of ship construction.

At the time of this happening, a finished ship was on the ways ready to be launched. The defendant had the contract to remove the temporary piling off-shore so that the river water might again find its way in between the piers in order that the vessel might be let off the ways into the river. The deceased, at the time of his injury and death, was at work astride the stringer piece removing the connecting bolts and fish plates to facilitate the removal by the defendant of the temporary piling and the interlocking iron sheeting. It is not disputed but that at the time he was in the employ of the Federal Shipbuilding and Dry Dock Company and not of the defendant. One of the iron sheets raised by a swinging hoist controlled from a derrick of the defendant, which was to be loaded on an attending barge, struck Mr. Baldwin, as a result of which he died almost at once.

Now at the end of the case, defendant's counsel moved for a direction of verdict on the ground that plaintiff's intestate was guilty of contributory negligence: that the defendant was guilty of no actionable negligence and, further, that there was no proof in the case that the administratrix *ad prosequendum* had given notice to the deputy commissioner of the United States employes compensation commission of an election to sue a person other than the employer of the deceased

for damages, it being asserted that such notice is required by the federal statute, known as the Longshoremen's and Harbor Workers' Compensation act. The trial judge did not pass upon any of these contentions but rested his determination on the fact that he believed the case to be maritime in character and that our state courts were without jurisdiction, saying that the courts of this state had "no jurisdiction over the subject-matter of this suit and that it belongs exclusively in the federal court. That is the only question that the court has decided." In directing a verdict upon this theory the trial court fell into reversible error.

Questions of this kind do not often arise at the Circuit, but a review of the authorities leaves no room for doubt but that structures of the character described above are, at law, considered land, and the place where the decedent was working, at the time he met his death, was an extension of the land. The cofferdam was not in aid of navigation. The piling in question, though temporary in character, had been driven into the bed of the river and the purpose of the construction was to provide what might perhaps be called a dry dock for shipbuilding. That this locale of the injury is, in legal contemplation, land and not navigable water is entirely settled. *Cf. The Plymouth,* 70 *U. S.* 20; *Johnson* v. *Chicago and Pacific Elev. Co.,* 119 *Id.* 388; *Smith & Son* v. *Taylor,* 276 *Id.* 179.

The respondent, however, in support of the judgment below, strongly urges that even admitting that the injury was received on land, nevertheless death occurred in navigable water. This, if true, is wholly immaterial. It was the blow which was received on the cofferdam which gave rise to the cause of action and the essential character of that cause of action is not altered at all because the decedent was precipitated into navigable water even though his death might have been caused by drowning. Compare *Minnie* v. *Port Huron Terminal Co. et al.,* 55 *Sup. Ct. Rep.* 884, and *Kenward* v. *The "Admiral Peoples,"* &c., *et al.,* 55 *Id.* 885.

Since we are of the opinion that the happening in question occurred on land, and that it is the place *where* the accident originates that determines the issue of jurisdiction between

the common law state court and the federal admiralty jurisdiction, it is perhaps unnecessary to consider any other question raised in the briefs.

The appellant, however, says that even though the injuries were sustained on navigable waters, the common law court none the less has jurisdiction. With this contention, we are in accord. Where the remedy sought is *in personam* and not *in rem,* even though the injury occurred in navigable waters, jurisdiction of the federal court is not exclusive. A grant by congress of admiralty jurisdiction to the federal court does not pre-empt the common law court of jurisdiction when it is competent to afford a remedy, as a reading of the Judiciary act of 1789 will disclose. See, also, 1 *C. J.* 1253; *Missell* v. *Foundation Co.,* 274 *U. S.* 427, and cases cited. See, also, *McDonald* v. *Mallory,* 77 *N. Y.* 546.

From what has been said, we might further observe that the provisions of the Longshoremen's and Harbor Workers' Compensation act have no application to the case under review on the facts or the law.

The judgment is therefore reversed, and a *venire de novo* awarded, costs to abide the event.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, HETFIELD, DEAR, WELLS, JJ. 14.